IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



**KERRY LEE WINSLOW,**

Petitioner,

v.                                                                          Civil Action No. **3:15CV440**

**HAROLD W. CLARKE,**

Respondent.

### MEMORANDUM OPINION

Kerry Lee Winslow, a Virginia inmate proceeding *pro se* and *in forma pauperis,* filed this

petition for a writ of habeas corpus under 28 U.S.C. § 2254 (hereinafter, "§ 2254 Petition," ECF

No. 1) challenging his convictions in the Circuit Court for the City of Portsmouth ("Circuit

Court"). Winslow pled guilty to grand larceny of a firearm and possession of a firearm by a

convicted felon in the midst of his jury trial and after he had testified in his defense. As outlined

below, the majority of Winslow's claims challenge portions of his trial prior to the entry of his

guilty plea. In his § 2254 Petition, Winslow argues entitlement to relief upon the following

grounds:[1]

| | |
|---|---|
| Claim One: | "Appointed trial counsel, Amy Kirby, . . . did not render effective assistance of counsel at the pre-trial plea negotiation process." (*Id.* at 7.) |
| Claim Two: | "The petitioner was shackled in the courtroom, in full view of the jury, without manifest necessity . . . ." (*Id.* at 8.) |

---

[1] Winslow has two sets of page numbering on his § 2254 Petition. The Court employs the page numbers set forth on the top of each page. The Court corrects the capitalization, punctuation, and spelling in the quotations from Winslow's submissions. Because Winslow's numbering of his "grounds" is confusing, the Court renumbers these grounds into claims for the sake of clarity.

Claim Three:    "Former trial counsel was ineffective[2] in the following aspects inducing the petitioner to plead guilty under duress, making such plea unlawfully induced" (*id.* at 9):

        (a)    "For failing to object to the petitioner appearing handcuffed and shackled in full view of the jury and commenting about petitioner being handcuffed and shackled to the jury during counsel's opening argument" (*id.*);

        (b)    "Counsel was ineffective for not interviewing witness Jerry Evans before placing him on the stand inasmuch as this witness testified adversely to the petitioner" (*id.* at 9);

        (c)    "Counsel was ineffective for failing to exclude yet another witness, the petitioner's mother, whom would have testified that the petitioner was at her house . . ." (*id.* at 10);

        (d)    "Counsel was ineffective for failing to move for a mistrial when petitioner advised him and the court that a juror was sleeping during the trial" (*id.*);

        (e)    "Counsel was ineffective for failing to object to the plea not being in writing" (*id.*);

        (f)    "Counsel was ineffective for failing to sever the theft of a firearm from the possession of a firearm" (*id.*); and,

        (g)    "Counsel was ineffective for failing to object to the entry of an order of conviction . . . that had been vacated in a prior habeas hearing" (*id.*).

Claim Four:    "The petitioner's due process rights[3] were violated when the court failed to accept as true the factual allegations in [his habeas] petition . . . ." (*Id.* at 11.)

Respondent moves to dismiss the § 2254 Petition. Winslow has responded. For the reasons explained below, the Motion to Dismiss (ECF No. 10) will be GRANTED.

---

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

## I.   PROCEDURAL AND FACTUAL HISTORY

A grand jury charged Winslow with grand larceny of a firearm and possession of a firearm by a convicted felon. *Commonwealth v. Winslow*, No. CR12-543-01 & -02, at 1 (Va. Cir. Ct. Apr. 5, 2012). A jury trial commenced on August 23, 2012. The evidence presented was summarized by the Circuit Court as follows:

> The Commonwealth's evidence showed Winslow spoke to Billy Bowen about buying a gun from Bowen and at 2:00 p.m. on October 11, 2011, Winslow arrived at Billy Bowen's home in Portsmouth where he resided with his girlfriend. Bowen brought out the gun, a .30-36 Mauser for which he was asking $150. Bowen identified the weapon from an old Polaroid photograph. (Tr. 47). The trunk of the car in which Winslow arrived was opened, and the gun was examined in the trunk. Winslow said he was purchasing the gun for the older man who had accompanied him. (Tr. 48). While the transaction was being discussed, a bullet became lodged in the weapon and Bowen went into his home to retrieve a rod to dislodge the bullet. When he returned, Winslow, the gun and the vehicle were gone. Bowen reported the theft to the police. (Tr. 52-53).
>
> Bowen's girlfriend of 25 years, Linda Todd, observed Bowen talking to Winslow from the front door of her home, a distance of 20 feet. (Tr. 66, 69). She observed Bowen place the gun in the trunk opened by a man accompanying Winslow. (Tr. 66-7). Winslow remained at the back of the car with the trunk open and Bowen did not carry the gun with him when he came back into the house to retrieve the rod to dislodge the bullet. (Tr. 70). When she turned to look back ouside, Winslow and the man had gotten in the car and were pulling off. (Tr. 70).
>
> The Commonwealth introduced four prior felony conviction orders to prove the felon in possession of a firearm offense, a hit and run from Chesapeake, a grand larceny from Virginia Beach and a burglary and felony failure to appear from Virginia Beach. (Tr. 78-79).
>
> Winslow testified he was just a passenger in the car when Jerry Evans and Winslow's sister Angie proceeded to Bowen's home so Angie could sell Bowen pills. Winslow said he was present to accommodate the sale from which he would receive money; he knew nothing about a gun. (Tr. 87, 89). Winslow had prior contacts with Bowen and Bowen and his girlfriend, Linda, knew him. (Tr. 91-92).
>
> When Angie drove up, Bowen was at his front door with the gun. (Tr. 94). She handed Winslow the car keys and he opened the trunk. Bowen put the gun in the trunk and while demonstrating how the weapon operated to Evans who was interested in buying the gun, (Tr. 99), Winslow returned the keys to Angie. He did not see Bowen leave and assumed he took the gun with him. (Tr. 100). He and Evans got into the car and left "quick[ly]." (Tr. 100). Angie dropped off Winslow at his mother's home. (T. 101, 106).

Winslow said there was bad blood between him and Evans over a girl and that could be a motive for Evans to lie about Winslow's part in the transaction. Evans had also accused Winslow of stealing a bike. (Tr. 104). Winslow said he had had conversation with Bowen afterward, but he refused to pay Bowen $150 because he did not take the gun. (Tr. 107). However, on May 16, 2012, Winslow had his father pay Bowen for the gun with a $150 cashier's check. (Tr. 118). Winslow admitted having four prior felony convictions and 11 prior misdemeanor convictions for lying, cheating or stealing. (Tr. 119-120).

Jerry Evans testified Winslow picked him up and they went to see Bowen about a gun Bowen was trying to sell. (Tr. 138). Evans said he had been drinking, did not feel well and did not recall events clearly but got back in the car when Winslow and Bowen started negotiating price. A few minutes later, Winslow got back in the car and they left. (Tr. 139, 143-44). He did not recall any pills being involved in the transaction and there was no girl in the car. (Tr. 141, 144).

The defense called Mona Wekheiser who testified she was living with Jerry Evans when he said he received $100 for a firearm he sold and he split the money with Angie, because she drove the car; he had dropped off Winslow beforehand and Winslow took no part in the deal. (Tr. 151, 155). She said there was bad blood between Evans and Winslow. (Tr. 152).

James Ennis, an investigator for the defense testified he spoke with Jerry Evans who said he knew nothing about a rifle, he was not there and had nothing to do with it. (Tr. 159).

At this point in the case, defense counsel conferred with Winslow and then Winslow asked to speak with his counsel and the Commonwealth's Attorney for the purpose of negotiating a plea.

*Winslow v. Clark*, No. CL14-1630, at 4-7 (Va. Cir. Ct. July 10, 2014).

The parties reached an oral agreement that Winslow would plead guilty to both charges with "five years with three and a half years suspended on the grand larceny [and] five years on the firearm charge with three years suspended for a total of three and a half years to serve." (Aug. 23, 2012 Tr. 162-63). The prosecutor indicated that he would need to write up a plea agreement, and the Circuit Court stated that "[y]ou don't need to write it up." (Aug. 23, 2012 Tr. 162.) The Circuit Court conducted an extensive plea colloquy with Winslow to confirm that he understood the agreement and was entering into the plea freely, knowingly, and voluntarily. (Aug. 23, 2012 Tr. 162-76.) In accordance with the plea agreement, Winslow was sentenced to

an active sentence of three years and six months of incarceration. *Commonwealth v. Winslow*, CR12-543-01 & -02, at 1 (Va. Cir. Ct. Aug. 27, 2012).

On appeal, Winslow argued "that the trial court's acceptance of his guilty plea violated [Supreme Court of Virginia] Rule 3A:8(c)(2)'s requirement that the plea agreement 'be reduced to writing' and signed by the parties," and "rendered his convictions void *ab initio*." *Winslow v. Commonwealth*, 749 S.E.2d 563, 565 (Va. Ct. App. Nov. 12, 2013). The Court of Appeals of Virginia disagreed and affirmed Winslow's convictions. *Id.* The Supreme Court of Virginia refused his petition for appeal. (*See* § 2254 Pet. 2.)

On May 9, 2014, Winslow filed a petition for a writ of habeas corpus in the Circuit Court. Petition for Writ of Habeas Corpus 1, *Winslow v. Clark*, No. CL14-1630 (Va. Cir. Ct. filed May 9, 2014). In his state petition, Winslow raised, *inter alia*, all of the claims in his instant § 2254 Petition. By Final Order entered on July 10, 2014, the Circuit Court denied and dismissed Winslow's habeas petition. *Winslow*, No. CL14-1630, at 21 (Va. Cir. Ct. July 10, 2014). The Supreme Court of Virginia refused the petition for appeal. *Winslow v. Clark*, No. 141346, at 1 (Va. June 26, 2015).

## II.  CLAIM NOT COGNIZABLE IN FEDERAL HABEAS

In Claim Four, Winslow contends that his "due process rights were violated when the court failed to accept as true the factual allegations in [his habeas] petition . . . ." (§ 2254 Pet. 11.) Specifically, Winslow challenges "the substance of the Circuit Court's findings that were not supported by the record and that the state court fact-finding process itself was deficient in material ways that which would amount to an unconstitutional suspension of the writ." (*Id.* at 11-12.) Winslow also believes that a hearing was necessary. (*Id.*) However, Winslow's claim alleging purported errors by the Circuit Court in his state post-conviction proceeding fails to

provide a basis for federal review or relief. *See Bryant v. State of Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (citations omitted). Accordingly, Claim Four will be DISMISSED.

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

### A.   Applicable Law

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* Fair

presentation demands that a petitioner present "'both the operative facts and the controlling legal principles'" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[4] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).

### B. Defaulted Claim

The Circuit Court found Claim Two (Claim (a)(1) in state court) barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Winslow could have raised, but failed to raise, this claim on direct appeal. *See Winslow*, No. CL14-1630, at 10.[5] *Slayton* constitutes an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Thus, Winslow procedurally defaulted Claim Two. To the extent Winslow claims that counsel is the cause for his default, as discussed below in Claim Three (a), the Circuit Court reasonably determined that he fails to demonstrate any prejudice, because his voluntary and intelligent guilty plea waived all non-jurisdictional defenses antecedent to his guilty plea. *See Winslow*, No. CL14-1630, at 10-11; *Peyton v. King*, 169 S.E.2d 569, 571 (1969). Accordingly, Claim Two is defaulted and barred from review here and will be DISMISSED.

### IV. THE APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

---

[5] The Circuit Court's reasoning is imputed to the Supreme Court of Virginia, which refused the Winslow's appeal without explanation. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court emphasizes that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## V.    FACTUAL BASIS FOR PLEA AND GUILTY PLEA PROCEEDINGS

Before the Circuit Court accepted Winslow's pleas of guilty, the Circuit Court conducted a plea colloquy to ensure that Winslow's pleas were knowingly, freely, and voluntarily entered into. During the guilty plea hearing, Winslow agreed that he fully understood the charges against him, he had gone over the charges and elements of proof with his attorney, and he understood what the Commonwealth would need to prove before he could be found guilty. (Aug. 23, 2012 Tr. 164.) Winslow agreed that he had sufficient time to discuss with his attorney possible defenses to the charges, and he had discussed with his attorney whether or not he should plead guilty or not guilty. (Aug. 23, 2012 Tr. 165.) Winslow agreed that he decided for himself to plead guilty, that he entered into the guilty plea freely and voluntarily, no one had threatened, intimidated, or coerced him into pleading guilty, and that he was pleading guilty because he was in fact guilty of the crime charged. (Aug. 23, 2012 Tr. 165.) Winslow admitted that he was currently on probation. (Aug. 23, 2012 Tr. 166.) Winslow agreed that he understood that by pleading guilty it could affect his probation and he could receive an additional period of incarceration. (Aug. 23, 2012 Tr. 166.) Winslow also agreed that he understood that by pleading guilty he gave up his right to a jury trial and waived the right to confront and cross-examine his accusers and defend himself. (Aug. 23, 2012 Tr. 166.) Winslow stated that he

9

understood that the maximum punishment for grand larceny was twenty years and the maximum

punishment for possession of a firearm by a convicted felon was five years of incarceration.

(Aug. 23, 2012 Tr. 167.) Finally, Winslow agreed that he was "entirely satisfied with the

services of [his] lawyer up until this point." (Aug. 23, 2012 Tr. 167.)

The Circuit Court then asked Winslow to "tell [the Circuit Court] exactly what [he] did."

(Aug. 23, 2012 Tr. 167.) Winslow stated:

> THE DEFENDANT: We went to his house that day.
>
> THE COURT: Who is "we"?
>
> THE DEFENDANT: Me and Jerry Evans and Angie. Angie was there. She was driving, and it was like I said it was, except for the fact that when we were pulling off, Jerry did say the gun was in the trunk of the car, and I guess that makes me culpable in the crime as much as anybody.
> I never touched the firearm, but I guess I'm guilt of -- guilty just like the rest of the people in the car, because I didn't –
>
> THE COURT: All right. Mr. Brice, talk to your client --
> Because I'm going to ask you this question again.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. I'm going to ask you what happened again.
> Talk to him.
>
> (Mr. Brice conferred with the defendant, Kerry Lee Winslow, out of the hearing of the court reporter.)
>
> THE DEFENDANT: Mr. Bowen stuck the gun in the trunk.
>
> THE COURT: Yes, sir.
>
> THE DEFENDANT: And I knew he stuck the gun in the trunk, and we left with the gun.
>
> THE COURT: You left with the gun. So you knew full well the gun was in the trunk; is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you pulled off --

THE DEFENDANT: Yes, sir.

THE COURT: -- with the intent to take the gun?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

(Aug. 23, 2012 Tr. 167-69.)   The Commonwealth then summarized the terms of the plea

agreement and Winslow agreed that he understood the terms.  (Aug. 23, 2012 Tr. 169-71.)

Mr. Winslow stated that he understood all of the questions the Court had asked him, and

he had no questions for the Court.  (Aug. 23, 2012 Tr. 172.)

As a factual basis for the plea, the Commonwealth explained:

Judge, from the Commonwealth's perspective, it would have been the evidence as testified to by Mr. Billy Bowen, that they -- that the victim in this matter met the defendant at - - where he resides at, his girlfriend's location of 1161 Hodges Ferry Road located in the city of Portsmouth, and at that time Mr. Bowen came out with a rifle that was a functioning firearm.  It was brought out. It was examined in the trunk of a car the defendant was at least riding in.

They discussed the transaction.  At that point, when Mr. Bowen was demonstrating how the firearm works, a bullet was lodged.  Mr. Bowen then went back into the -- went back into the residence to fetch a tool to dislodge it.  When he came out, it was gone.

No property was returned, and you know, obviously -- and no compensation was given within a – within a decent period of time after the event I understand, and I do have the check . . .

(Aug. 23, 2012 Tr. 173-74.)   The Court asked Winslow if he agreed with the Commonwealth's

recitation of the facts and he answered: "I do, yes, sir."  (Aug. 23, 2012 Tr. 174.)   The Court

asked again: "You do, sir?"  (Aug. 23, 2012 Tr. 174.)   Winslow answered: "Totally."  (Aug. 23,

2012 Tr. 174.)   The Court found Winslow's plea of guilty "given freely, voluntarily, and

knowingly without coercion or promise of leniency or reward, and" that he "underst[ood] the

nature of the charges and the evidence that would be presented and the nature and consequences

of [his] pleas of guilty."  (Aug. 23, 2012 Tr. 174.)   The Court then accepted the pleas of guilty.

(Aug. 23, 2012 Tr. 175.

## VI.    INEFFECTIVE ASSISTANCE OF COUNSEL

### A.    Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). An assertion by Winslow that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to

12

pleading guilty. *See id.* at 369–70.  In conducting the foregoing inquiry, the representations of

the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any

findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).  Thus, "[a]bsent clear

and convincing evidence to the contrary, a defendant is bound by the representations he makes

under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir.

1992) (citations omitted).

### B.       Ineffective Assistance Prior to Entry of Guilty Plea

#### 1.       Claim Three, Parts (a) through (d)[6]

In Claim Three, Winslow claims that counsel's deficiency led him "to plead guilty under

duress, making such plea unlawfully induced." (§ 2254 Pet. 9.)  As discussed below, and as the

Supreme Court reasonably determined, Winslow's contentions are belied by the record and

foreclosed by his validly entered guilty plea.

In Claim Three, parts (a) through (d), Winslow faults counsel for deficiencies during the

jury trial prior to the entry of his guilty plea.  In Claim Three (a), Winslow faults counsel "[f]or

failing to object to the petitioner appearing handcuffed and shackled in full view of the jury and

commenting about petitioner being handcuffed and shackled to the jury during counsel's opening

argument." (*Id.*)  In rejecting this claim, the Circuit Court explained:

> Petitioner's allegation is waived by his knowing and voluntary guilty pleas. *Terry*
> [*v. Commonwealth*], 30 Va. App. [192,] 196-97, 516 S.E.2d [233,] 235 [(1999)]
> (quoting *Tollett v. Henderson*, 411 U.S. [258,] 267 [(1973)].  His allegation is
> likewise in conflict with statements made during the guilty plea colloquy and
> petitioner has offered no valid reason he is entitled to now controvert those
> statements. *See Anderson* [*v. Warden*], 222 Va. [511,] 516, 281 S.E.2d [885,] 888
> [(1981)].  Further, petitioner received a combined active sentence of three years

---

[6] For the sake of clarity, the Court addresses Winslow's claim in the same order and grouping as
the Circuit Court examined his claim in denying his state habeas petition.

and six months. Petitioner has not argued and it cannot be said that an objectively reasonable defendant with "credibility issues" would have pleaded not guilty and risked up to 25 years in prison. Finally, petitioner cannot demonstrate prejudice as he was not found guilty or sentenced by the jury. Under the circumstances of petitioner's case, his allegation fails to demonstrate deficient performance or prejudice.

*Winslow*, No. CL14-1630, at 14-15.

In Claim Three (b), Winslow argues that, "[c]ounsel was ineffective for not interviewing witness Jerry Evans before placing him on the stand inasmuch as this witness testified adversely to the petitioner." (§ 2254 Pet. 9.) In rejecting Claim Three (b), the Circuit Court again found that Winslow's allegations were waived by his knowing and voluntary plea, that his allegation conflicted with his sworn statements during the plea hearing, and that he could not demonstrate prejudice. *Winslow*, No. CL14-1630, at 15. In addition, the Circuit Court explained: "Finally, petitioner has failed to proffer a valid defense counsel could have put on which would reasonably have led to his acquittal." *Id.* The Circuit Court reasonably determined that Winslow failed to demonstrate deficient performance or prejudice.

In Claim Three (c), Winslow contends that "[c]ounsel was ineffective for failing to exclude yet another witness, the petitioner's mother, whom would have testified that the petitioner was at her house immediately after leaving the plaintiff's house." (§ 2254 Pet. 10.) In rejecting Claim Three (c), the Circuit Court found:

> Once again, petitioner's allegation is waived by his subsequent knowing and voluntary guilty pleas. *Terry*, 30 Va. App. at 196-97, 515 S.E.2d at 235 (quoting *Tollett v. Henderson*, 411 U.S. at 267). His allegation is likewise in conflict with statements made during the guilty plea colloquy and should be dismissed pursuant to the rule in *Anderson*, 222 Va. at 516, 281 S.E.2d at 888. Moreover, petitioner testified that he has been riding around with Evans and Angie, went to Bower's home where Evans talked to Bower about a gun to trade for pills and that he was dropped off at his mother's house. (Tr. 101). Petitioner has proffered nothing that his mother could testify about concerning his involvement in the theft of the gun. His failure to do so is fatal to his claim. Petitioner's conclusory, self-serving allegations are insufficient to support habeas corpus relief. *Elliott v. Warden*, 274 Va. 598, 613, 652 S.E.2d 465, 480 (2007).

14

> [W]ithout a specific, affirmative showing of what the
> missing evidence or testimony would have been, a "habeas
> court cannot even begin to apply *Strickland*'s standards" because "it is
> very difficult to assess whether counsel's performance was
> deficient, and nearly impossible to determine whether the
> petitioner was prejudiced by any deficiencies in counsel's
> performance."

*Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (citation omitted). *See Muhammad v. Warden*, 274 Va. 3, 18, 646 S.E.2d 182, 195 (2007); *Hendrick v. Warden*, 264 Va. 486. 521, 570 S.E.2d 847, 862 (2002) (both finding habeas petitioner had not established deficient performance or prejudice because he failed to provide any evidence to support claim). Accordingly, his claim lacks sufficient facts to prove deficient performance or prejudice under the *Strickland/Hill* test.

> Finally, petitioner received a combined active sentence of three years and
> six months. Petitioner has not argued and it cannot be said that an objectively
> reasonable defendant with "credibility issues" would have pleaded not guilty and
> risked up to 25 years in prison. Under the circumstances of petitioner's case, his
> allegation fails to demonstrate deficient performance or prejudice.

*Winslow*, No. CL14-1630, at 16-17.

Finally, in Claim Three (d), Winslow argues that "[c]ounsel was ineffective for failing to move for a mistrial when petitioner advised him and the court that a juror was sleeping during the trial." (§ 2254 Pet. 10.) In rejecting Claim Three (d), the Circuit Court explained:

> The record does not support this allegation. The record shows after the lunch
> break, the court admonished the jurors to nudge their neighbors if they appeared
> to be nodding off. This statement reflects jurors may have appeared sleepy but
> there is no indication of a sleeping juror in the record. Petitioner's claim states an
> insufficient basis for moving for a mistrial.

*Winslow*, No. CL14-1630, at 17-18. The Circuit Court also found that Winslow's allegations were waived by his knowing and voluntary plea, that his allegation conflicted with his sworn statements during the plea hearing, and that he could not demonstrate prejudice. *Id.* at 18. Accordingly, the Circuit Court concluded that he failed to demonstrate deficient performance by counsel or prejudice. *Id.*

The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's denial of Claims Three, parts (a) through (d).

*See* 28 U.S.C. § 2254(d)(1)–(2). Winslow had an opportunity to hear all of the Commonwealth's evidence against him, put on his defense, and then, after hearing the evidence, Winslow requested to pursue a plea deal with the Commonwealth, and the Commonwealth graciously agreed to make a deal at that late juncture. During his guilty plea hearing, Winslow swore that he was satisfied with counsel's performance and admitted that he was guilty of the charges. Winslow offers no clear and convincing evidence demonstrating that his statements under oath were not true. Moreover, Winslow fails to demonstrate any prejudice from purported errors of counsel prior to the entry of his guilty plea. The evidence of Winslow's guilt was overwhelming, and he faced up to twenty-five years in prison if the jury found him guilty. Winslow aptly perceived this and decided to pursue a plea deal with a three and a half-year term of incarceration. Winslow simply cannot demonstrate that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 52, 59 (1985). Accordingly, he fails to demonstrate any deficiency of counsel or resulting prejudice. Claim Three, parts (a) through (d) will be DISMISSED.

### 2.    Claim One

In Claim One, Winslow argues that "[a]ppointed trial counsel, Amy Kirby, . . . did not render effective assistance of counsel at the pre-trial plea negotiation process." (§ 2254 Pet. 7.)[7] Winslow contends that, prior to his decision to proceed to trial, "the Commonwealth was offering [a] 2 yr. active [sentence of] incarceration and 2 yr. probation," but counsel "stated only that is [sic] was not a good deal." (*Id.*) Winslow apparently told counsel that he would take a one-year sentence or five year sentence if the Commonwealth promised to run his other sentences concurrent to the new sentence. (*Id.*) Winslow contends that counsel never told him

---

[7] Kirby was an assistant public defender. (*See* Aug. 23, 2012 Tr. 131-32.) Winslow had different counsel, James P. Brice, Jr., represent him at trial.

that the Commonwealth's offer would expire or that it was impossible to receive a one-year

sentence because of minimum sentences for the offenses, but if she had, he would have taken the

two-year plea agreement. (*Id.*) In its rejection of Claim One, the Circuit Court explained:

> At the threshold, petitioner's allegation makes clear that counsel was conferring with petitioner and conveyed to petitioner a plea offer made by the prosecution. Petitioner rejected it and now says the circumstances were not adequately explained to him and the prosecutor would not give the same deal after petitioner opted for a jury trial and the trial was almost complete when petitioner obtained an opportunity for a plea agreement.
> Petitioner's allegation is waived by his subsequent knowing and voluntary guilty pleas. *Terry*, 30 Va. App. at 196-97, 516 S.E.2d at 235 (quoting *Tollett v. Henderson*, 411 U.S. at 267). His allegation is likewise in conflict with statements made during the guilty plea colloquy and should be dismissed pursuant to the rule in *Anderson*, 222 Va. at 516, 281 S.E.2d at 888. Finally, while petitioner was entitled to plead guilty at that stage of the trial he was not entitled to any plea agreement as to sentence with the Commonwealth nor is it objectionable that the Commonwealth would not give the petitioner the same terms that were earlier offered after having spent almost a day in court trying the case to a jury. Petitioner utterly fails to demonstrate deficient performance or prejudice. Further, petitioner received a combined active sentence of three years and six months. Petitioner has not argued and it cannot be said that an objectively reasonable defendant with "credibility issues" would have pleaded not guilty and risked up to 25 years in prison. Under the circumstances of petitioner's case, his allegation fails to demonstrate deficient performance or prejudice.

*Winslow*, No. CL14-1630, at 19. The Court discerns no unreasonable application of the law and

no unreasonable determination of the facts in the Circuit Court's denial of Claim One. *See* 28

U.S.C. § 2254(d)(1)–(2).

As a general rule, counsel had a duty to communicate formal plea offers from the

Government to the defendant. *See Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). A defense

attorney's inaccurate advice or misinformation in conveying a plea offer may constitute deficient

performance. *See United States v. Brannon*, 48 F. App'x 51, 53 (4th Cir. 2002) (unpublished)

(citation omitted); *see also United States v. Merritt*, 102 F. App'x 303, 307–08 (4th Cir. 2004)

(unpublished); *Wolford v. United States*, 722 F. Supp. 2d 664, 687–88 (E.D. Va. 2010).

Moreover, incomplete advice in conveying a plea may also provide a basis for a claim of

ineffective assistance of counsel. *Wolford*, 722 F. Supp. 2d at 689; *see United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). In the plea context, to demonstrate prejudice, Winslow must also show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) (quoting *Hill*, 474 U.S. at 59).

Although Winslow fails to provide any details about the purported plea offer, he clearly indicates that counsel communicated the plea offer to him. Thus, Winslow must demonstrate that, due to some deficiency of counsel, he rejected the plea offer and was prejudiced. Winslow provides scant information about his communications with his attorney. At most, Winslow states that counsel "stated only that is [sic] was not a good deal." (§ 2254 Pet. 7.) Winslow fails to provide sufficient details regarding counsel's errors so that a court could find counsel acted unreasonably.

Winslow also fails to demonstrate any prejudice. During trial, Winslow admitted that counsel went over the evidence with him and that she indicated how strong the evidence would have been. (Aug. 23, 2012 Tr. 131.) Winslow indicated during trial that he had "always maintained [his] innocence." (Aug. 23, 2012 Tr. 132.) Winslow's refusal to accept responsibility for his actions leading up to trial, and even during trial, casts serious doubt on his statements that, but for counsel's purported deficiency, he would have entered into the earlier guilty plea, prior to his jury trial. Moreover, Winslow's statement that he told counsel he would take a one-year sentence, or a five-year sentence with all other previous sentences to run concurrent, and wanted counsel to "convey the counter offer to the Commonwealth" (§ 2254 Pet. 7), further supports the finding that Winslow essentially rejected the purported plea agreement with a two-year sentence. As the Circuit Court determined, Winslow fails to demonstrate any deficiency of counsel or resulting prejudice. Claim One will be DISMISSED.

### 3.   Claim Three (f)

In Claim Three (f), Winslow argues, in sum, that "[c]ounsel was ineffective for failing to sever the theft of a firearm from the possession of a firearm." (§ 2254 Pet. 10.)  Later in his response, he further explains that:  "The possession of a firearm mandated that my record be submitted and the larceny did not." (Resp. 14, ECF No. 16.)  In rejecting this claim, the Circuit Court explained:

> Petitioner's allegation is waived by his subsequent knowing and voluntary guilty pleas. *Terry*, 30 Va. App. at 196-97, 516 S.E.2d at 235 (quoting *Tollett v. Henderson*, 411 U.S. at 267).  His allegation is likewise in conflict with statement made during the guilty plea colloquy and should be dismissed pursuant to the rule in *Anderson*, 222 Va. at 516, 281 S.E.2d at 888.
>
> Further, while ordinarily, separate trials are required "where evidence of one crime is not admissible in the trial of the others," *Long v. Commonwealth*, 20 Va. App. 223, 226-27, 456 S.E.2d 138, 139 (1995); *Johnson v. Commonwealth*, 20 Va. App. 49, 56, 455 S.E.2d 261, 265 (1995), the facts of this case shows the testimony of the Commonwealth's witnesses established a prima facie case on the gun larceny charge, and while Winslow was not required to testify, he conferred with counsel, and decided for himself to testify at trial. (Tr. 84.)  As it appears, it was the petitioner's intent to testify, his prior criminal conduct was admissible to impeach his credibility, and thus there was no need for counsel to move to sever the charges.  To prove the charge of possession of a firearm after being convicted of a felony, the Commonwealth was required to prove that petitioner was a convicted felon.
>
> Thus, under the circumstances of this case, petitioner fails to show deficient performance or prejudice with regard to this allegation.

*Winslow*, No. CL14-1630, at 20-21.  Again, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's denial of Claim Three (f). *See* 28 U.S.C. § 2254(d)(1)–(2).

First, Winslow fails to demonstrate any prejudice, because he cannot show that, but for counsel's failure to move to sever the charges, he would have insisted on proceeding with the jury trial and would not have entered into the guilty plea.  Moreover, Winslow argues that counsel should have moved to sever the charges under Virginia law.  Given that the resolution of this aspect of his claim is highly dependent upon Virginia law and was rejected by the Circuit

Court, Winslow fails to demonstrate prejudice. *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . , a federal court should be especially differential to a state post-conviction court's interpretation of its own state's law.")   As the Circuit Court reasonably determined, Winslow fails to demonstrate any prejudice from counsel's failure to have the charges severed. Claim Three (f) will be DISMISSED.

### 4.   Claim Three (g)

In Claim Three (g), Winslow argues, in sum, that "[c]ounsel was ineffective for failing to object to the entry of an order of conviction . . . that had been vacated in a prior habeas hearing." (§ 2254 Pet. 10.) Winslow cites to "Exhibit G" which are purportedly the handwritten notes of Amy Kirby. (*See* ECF No. 1-7, at 1.) The notes reflect that Winslow told Kirby that one of his prior convictions had been vacated. (*Id.*) The Circuit Court did not address this claim. However, it clearly lacks merit.

During trial, the Commonwealth introduced four prior felony conviction orders to prove the felon in possession of a firearm offense. *See* Winslow, No. CL14-1630, at 5 (citing Aug. 23, 2012 Tr. 78-79). These included a hit and run from Chesapeake, a grand larceny from Virginia Beach, and a burglary and felony failure to appear from Virginia Beach. *See id.* Only one of these felony orders was required to demonstrate that Winslow was a felon. Thus, Winslow fails to demonstrate any deficiency of counsel or resulting prejudice from failing to object to one of his prior orders of conviction. Claim Three (g) will be DISMISSED.[8]

---

[8] In a rambling paragraph at the end of Claim Three, Winslow essentially argues that counsel's cumulative errors during trial forced him to enter into a plea. (§ 2254 Pet 9-10.) The Commonwealth addresses this as a separate claim. (*See* Br. Supp. Mot. Dismiss 7.) Winslow does not delineate this as a separate claim, and the Court sees no need to identify it as such, because it clearly lacks merit. In light of the overwhelming evidence of his guilt of being a felon in possession of a firearm and grand larceny of a firearm, his likelihood of conviction on those

### C.   Purported Ineffective Assistance Related to Entry of Guilty Plea

In Claim Three (e), Winslow contends, in sum, that "[c]ounsel was ineffective for failing to object to the plea not being in writing." (§ 2254 Pet. 10.) In his response, Winslow faults counsel for not objecting to his plea agreement because he and counsel "did not actually know the terms" of the plea agreement. (Resp. 14.) The Circuit Court determined that:

> Petitioner's allegation is waived by his subsequent knowing and voluntary guilty pleas. *Terry*, 30 Va. App. at 196-97, 516 S.E.2d at 235 (quoting *Tollett v. Henderson*, 411 U.S. at 267). His allegation is likewise in conflict with statements made during the guilty plea colloquy and should be dismissed pursuant to the rule in *Anderson*, 222 Va. at 516, 281 S.E.2d at 888. Finally, this claim fails to demonstrate either prong of the demanding *Strickland/Hill* test for the reasons stated on direct appeal. *See Winslow v. Commonwealth*, 62 Va. App. 539, 749 S.E.2d 563 (2013).

*Winslow*, No. CL14-1630, at 19-20. The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's denial of Claim Three (e). *See* 28 U.S.C. § 2254(d)(1)–(2).

During his plea colloquy, the Commonwealth indicated that he was "going to need to write up a plea agreement." (Aug. 23, 2012 Tr. 162.) The Circuit Court determined that writing up the agreement was not necessary and asked the Commonwealth to explain its terms. (Aug. 23, 2012 Tr. 162.) The Commonwealth clearly stated that the plea agreement's sentencing terms were "five years with three and a half suspended on the grand larceny; five years on the firearm charge with three years suspended for a total of three and a half years to serve." (Aug. 23, 2012 Tr. 162-63.) The Commonwealth repeated the terms again later and indicated that Winslow would also have three years of supervised probation to follow. (Aug. 23, 2012 Tr. 169.) The clerk also repeated the exact terms back to Winslow. (Aug. 23, 2012 Tr. 169-71.) Winslow

---

counts, and his sentencing exposure of twenty-five years, combined with the beneficial sentencing terms of the plea agreement, Winslow cannot demonstrate that a reasonable defendant in his position would not have pled guilty and would have insisted on continuing with the jury trial.

agreed three times during the proceeding that he understood the terms of the agreement. (Aug. 23, 2012 Tr. 163, 169, 171.)  Winslow also agreed under oath that he was satisfied with counsel's representation of him.  Winslow offers no clear and convincing evidence that would demonstrate that his statements under oath were not true.  Winslow's valid and knowing guilty plea and his statements under oath foreclose his contention here that counsel rendered ineffective assistance for failing to have the agreement reduced to writing because Winslow failed to understand the guilty plea's terms.

Additionally, in light of the overwhelming evidence of his guilt of grand larceny of a firearm and possession of a firearm by a convicted felon, and the sentencing benefit he received from the guilty plea, Winslow fails to demonstrate that, but for counsel's purported error in failing to have the plea reduced to writing, he would have insisted on continuing with the jury trial. Thus, Winslow fails to demonstrate any prejudice.  Claim Three (e) will be DISMISSED.

## VII.   OUTSTANDING MOTION

Winslow also filed a request for discovery.  (ECF No. 22.)  Winslow claims that because there is a "material fact in dispute concerning whether the petitioner rejected the plea offer or simply attempted to negotiate a better deal[,] the petitioner request [sic] that discovery be allowed" in the form of interrogatories of former counsel.  (Br. Supp. Mot. Disc. 2, ECF No. 23.)  Winslow also desires to "conduct discovery of former retained counsel . . . to settle the material fact in dispute regarding how his statements to the jury would work to the defendants [sic] advantage" regarding Winslow being in handcuffs.  (*Id.* at 2-3.)  Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ."  Rules Governing § 2254 Cases Rule 6(a).  Good cause for discovery under Rule 6(a) is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed,

22

be able to demonstrate that he is[] entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (citation omitted).   Winslow fails to demonstrate good cause to warrant discovery. Winslow fails to demonstrate that, if he were permitted to conduct the desired discovery, he could more fully develop the facts and thereby demonstrate entitlement to relief.   As previously explained, Winslow fails to demonstrate any prejudice from counsel's actions.   Accordingly, Winslow's request for discovery (ECF No. 22) will be DENIED.

## VII.   CONCLUSION

Respondent's Motion to Dismiss (ECF No. 10) will be GRANTED.   The § 2254 Petition will be DENIED.   Winslow's claims will be DISMISSED, and his request for discovery (ECF No. 22), and for bond (ECF No. 30) will be DENIED.   The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1)(A).   A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).   Winslow fails to meet this standard.   Accordingly, the Court will deny a certificate of appealability.

An appropriate order will accompany this Memorandum Opinion.

_____ /s/

Roderick C. Young
United States Magistrate Judge

Date:   September 8, 2016
Richmond, Virginia

23